S07A0927. BERRY v. THE STATE.
(651 SE2d 1)

CARLEY, Justice.

A jury found James Berry guilty of felony murder of Nicolas Rotunno during the commission of aggravated assault, and the trial court sentenced him to life imprisonment. Berry filed a motion for new trial and, after the trial court denied that motion, he brought this appeal.[*]

1. An independent review of the record shows the following: Rotunno was hosting a party at the residence he shared with his brother. An altercation developed, and several of the guests were asked to leave. One of the ousted guests phoned Derek Barker and informed him of the dispute. Barker passed the information along to Berry. A short time later, Berry, accompanied by Barker and two others, drove to the party, anticipating that a fight might take place when they got there. Upon their arrival, a confrontation did develop. Rotunno, who was armed with a knife, demanded that Berry and his three passengers leave. He was yelling and threatened to kill them. Rotunno struck the hood of the vehicle twice. When Berry and his three companions were in the car, Berry gunned the engine and drove at Rotunno who was standing in front of the vehicle. Rotunno tried to hold on to the hood to avoid injury. However, he was dragged underneath, was run over and his skull was crushed. The severe brain damage that he suffered resulted in his death.

Berry asserted a justification defense. Although he also requested a charge on accident, the trial court did not give that instruction, and he does not enumerate the failure to give it as error. The jury was unable to reach a verdict on the malice murder count of the indictment, but found him guilty of felony murder while in the commission of aggravated assault. When construed most strongly in support of the jury's verdict, the evidence is sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt that

---

[*] The homicide occurred on March 5, 2005. The grand jury indicted Berry on June 13, 2005. The jury returned the guilty verdict on December 13, 2005. The trial court entered the judgment of conviction and imposed the life sentence on December 16, 2005. Berry filed a motion for new trial on January 10, 2006, which the trial court denied on January 31, 2007. Berry filed a notice of appeal on February 9, 2007, and the case was docketed in this Court on March 12, 2007. The appeal was orally argued on June 4, 2007.

Berry was guilty of that offense. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Martin v. State*, 283 Ga. App. 652 (642 SE2d 340) (2007).

2. Berry urges that the trial court violated OCGA § 17-8-57 by expressing to two jurors the court's opinion that Berry was guilty. Even if defense counsel had not raised that objection below, any alleged violation of OCGA § 17-8-57 still must be reviewed in accordance with the "plain error" rule. See *Paul v. State*, 272 Ga. 845, 848 (3) (537 SE2d 58) (2000). That rule allows a criminal defendant to avoid the penalty of waiver, by "permit[ting] appellate review of assertions of error raised for the first time on appeal where the asserted error affects substantive rights." *Brooks v. State*, 281 Ga. 514, 516 (2) (640 SE2d 280) (2007). However, the transcript shows that consideration of the merits of Berry's enumeration of error is not dependent on the "plain error" rule, because the objection that his trial counsel did raise below was sufficient to preserve appellate review of the alleged violation of OCGA § 17-8-57.

The record shows that the issue developed as a result of a note that the two jurors sent to the trial court, asking for a meeting because of their belief that they were too personally connected to Berry's family to continue deliberations. At the request of one of the two jurors for more privacy, the trial court cleared the courtroom of all spectators, and it then proceeded to question each, separately from one another and outside the presence of the remaining jurors, about his possible disqualification. In initially addressing the matter, the trial court never expressed or even intimated any opinion regarding Berry's guilt. Contrary to Berry's characterization of the colloquies, the record clearly shows that the trial court was simply trying to determine whether the two jurors should be excused from further service because of their relationship with Berry's family.

> The trial court must exercise its discretion in removing a juror, and it may [effect] such a removal even after deliberations have begun. [Cit.] . . . Where the basis for the juror's incapacity is not certain or obvious, "some hearing or inquiry into the situation is appropriate to the proper exercise of judicial discretion." [Cit.]

*State v. Arnold*, 280 Ga. 487, 489 (629 SE2d 807) (2006). Here, the inquiries were appropriate to the trial court's determination as to how to exercise its discretion.

After the trial court's initial questioning of the two jurors, the State requested that they each be replaced with an alternate. However, defense counsel objected and asked that they be retained and that, after further instructions, the full jury be permitted to return to

its deliberations. At that point, the trial court asked each juror to return for further individual questioning about the extent to which his connection with Berry's family might compromise his impartiality. At the conclusion of these additional inquiries, the trial court concluded that it would allow both of the jurors to remain. When the trial court asked if there were any objections to its final resolution of the matter, defense counsel stated that,

> at the very least this ought to be the time when both of those jurors, if not all 12, ought to be told that there is no requirement that they give up honestly-held convictions, and both of them said they were deliberating and could continue to deliberate, but both of them, especially with what the Court instructed, could feel like, well, it is okay to go back in and give up my honestly-held convictions not to convict and just go along for the sake of going along.

In response to this objection, the trial court called all of the jurors into the courtroom and recharged them on their duty to deliberate with open minds without surrendering their honest opinion merely for the purpose of unanimity. Berry did not raise any objections to the recharge or to the trial court's resolution of the matter, and the jury resumed its deliberations.

Thus, a violation of OCGA § 17-8-57 did not occur in the context of determining the two jurors' potential disqualification. Instead, the trial court, in effect, resolved the issue in the manner that Berry had requested. It allowed the two jurors to remain even though they had expressed concerns for their impartiality in his favor and it then recharged the entire jury on the duty to deliberate without conceding a firmly held opinion as to guilt or innocence.

3. Citing *Waller v. Georgia*, 467 U. S. 39 (104 SC 2210, 81 LE2d 31) (1984), Berry urges that the trial court violated his constitutional right to a public trial when it ordered the removal of all spectators from the courtroom before speaking with the jurors about their possible disqualification.

> "(A) violation of one's right to a public trial is structural error. (Cits.) Structural error is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' (Cit.) As such, structural errors are not subject to harmless error analysis. (Cit.)" [Cit.]

*Hunt v. State*, 268 Ga. App. 568, 570-571 (1) (602 SE2d 312) (2004).

In *Waller*, the [Supreme] Court [of the United States] held that the defendants' Sixth Amendment rights had been violated when the trial court granted the [S]tate's motion to close the hearing on the defendants' motion to suppress and barred spectators.

*Hunt v. State*, supra at 570 (1). Here, unlike in *Waller*, the trial court did not grant a motion by the State to close a pre-trial evidentiary hearing. Instead, the trial court acted in response to the request of one of the jurors for a more private setting in which to discuss his personal connections with Berry's family. When informed of the juror's request, the trial court asked "everyone in the courtroom other than the lawyers and court personnel to be excused for a few minutes, please."

The jury selection process may, in some circumstances, give rise to a compelling interest of a prospective juror when interrogation touches on deeply personal matters that person has legitimate reasons for keeping out of the public domain. . . . To preserve fairness and at the same time protect legitimate privacy, a trial judge must at all times maintain control of the process of jury selection and should inform the array of prospective jurors, once the general nature of sensitive questions is made known to them, that those individuals believing public questioning will prove damaging because of embarrassment, may properly request an opportunity to present the problem to the judge in camera but with counsel present and on the record.

*Press-Enterprise Co. v. Superior Court of California, Riverside County*, 464 U. S. 501, 511-512 (III) (104 SC 819, 78 LE2d 629) (1984). In this case, the issue arose after deliberations had begun, rather than during the initial selection process, and the request for closure was initiated by the juror himself, rather than prompted by the trial court's inquiry as to whether there was a need for privacy. Despite these factual differences, however, Berry does not suggest any reason why the legal principle established in *Press-Enterprise Co.* is not equally applicable here.

By requiring the prospective juror to make an affirmative request, the trial judge can ensure that there is in fact a valid basis for a belief that disclosure infringes a significant interest in privacy. This process will minimize the risk of

unnecessary closure. The exercise of sound discretion by the [trial] court may lead to excusing such a person from jury service.

*Press-Enterprise Co. v. Superior Court of California, Riverside County*, supra at 512 (III). Because the jurors had indicated that they were concerned about their impartiality based upon connections with Berry's family, it was not unreasonable to ask that the courtroom be cleared, since the spectators presumably might include the very members of Berry's family to whom the jurors had referred. Since Berry, the attorneys and the court personnel, including the court reporter, were present, the defense had every opportunity to address the legal issues arising from the jurors' concerns and was assured of a full and complete transcript to preserve the trial court's resolution of the matter for possible appellate review. The trial court did not abuse its discretion by asking that those who did not have an immediate and direct interest in the matter leave the courtroom for the short period of time that was needed to determine whether the jury that had been selected should remain intact.

Moreover, Berry never objected when the juror expressed the desire for a more private setting to express his concerns. *Hunt v. State*, supra at 571 (1). Compare *Waller v. Georgia*, supra at 47 (II) (A) (holding that closure "over the objections of the accused must meet the tests set out in *Press-Enterprise* and its predecessors"). In fact, defense counsel testified at the hearing on the motion for new trial that he made a strategic decision that he would not object, because he hoped to prevent disqualification of the two jurors and, thus, did not want to be seen as opposing the request for privacy. Counsel stated that "[i]f you think these are people you might want to keep on the jury, why would you not accommodate what one of [them] has asked for?" The decision not to oppose the request for closure was a reasonable trial tactic, since the two jurors were presumably favorably disposed to Berry based upon their connection with his family. The attorney was successful in opposing the State's motion to replace the two jurors, and Berry cannot now contend that the trial court's grant of the unopposed request to close the courtroom was structural error which violated his constitutional right to a public trial.

4. Berry contends that the trial judge also committed structural error when he left the courtroom during voir dire.

Georgia has long recognized that "[i]t is not proper for the presiding judge to absent himself from the court-room during the trial of a murder case, without suspending the trial during his absence. . . ." *Pritchett v. State*, 92 Ga. 65-66 (2) (18 SE 536) (1893), criticized on other grounds, *Horne v. Rogers*, 110 Ga. 362, 370 (5) (35 SE 715) (1900). Thus, the trial judge in this case clearly erred when,

rather than taking a recess, he left the bench during voir dire. However, the absence of the trial judge, without more, does not show a structural error. "We cannot . . . anticipate every circumstance under which the judge's absence may destroy the structure. The structure normally stands if the parties consent to excuse the presence of a judge. [Cits.]" *United States v. Mortimer*, 161 F3d 240, 241 (3d Cir. 1998). The consent which preserves the structure of the trial may be implied, as well as express, as when the parties do not avail themselves of the opportunity to object to the absence. See *Stirone v. United States*, 341 F2d 253, 256 (3d Cir. 1965) (holding that trial judge's absence "was definitely with the implied assent of both counsel. Affirmative assent was not necessary under the trial situation.").

Thus, the rule followed in Georgia is that, although the absence of the trial judge is always deemed to be error, it is generally reversible only "when it is objected to and when it results in some harm. [Cits.]" *Wilson v. State*, 271 Ga. 811, 817 (6) (525 SE2d 339) (1999). Here, Berry had an opportunity to object, because the trial judge announced his intention to step out beforehand. Compare *United States v. Mortimer*, supra (trial judge gave "no notice to counsel or the jury that he was about to depart. He was simply gone."). However, the defense did not raise an objection. At the hearing on the motion for new trial, the trial attorney testified that, having been advised of the trial judge's intention to leave momentarily, he made the conscious decision not to object, that the trial judge was absent for only a very brief period and that, during the absence, nothing of any significance occurred. Thus,

> in this case, no objection was made to the trial judge's brief absence, and the defendant and his counsel, who were both present at the [voir dire], are unable to demonstrate any harm. Accordingly, the trial judge's absence during the [voir dire] is not reversible error.

*Wilson v. State*, supra. However, the practice of a trial judge leaving the bench during a critical stage of the trial, rather than calling a recess, is not to be condoned in Georgia, and this Court will not hesitate to reverse convictions where, unlike here, the record shows that the absence resulted in structural error. See *United States v. Mortimer*, supra.

5. Berry enumerates as error the trial court's failure to charge on reckless conduct as a lesser included offense of aggravated assault. However, his defense was justification. That defense concedes that the defendant's act was intentional, but was committed for an excusable reason, such as self-defense. See *Fields v. State*, 167 Ga. App.

816, 818 (3) (307 SE2d 712) (1983). In contrast, "[r]eckless conduct involves criminal negligence. [Cit.]" *Martin v. State*, supra at 653. Berry never testified in his own defense, and the evidence that was presented showed without dispute that, although he may not have intended to kill Rotunno, he intentionally gunned the engine and then drove at the victim who was acting aggressively and was armed with a knife. Compare *Bowers v. State*, 177 Ga. App. 36, 39 (2) (338 SE2d 457) (1985). The undisputed evidence also showed that he could have maneuvered the car so as to leave the premises without hitting Rotunno. Thus, there is no evidence that Berry was simply negligent when he drove the car at, and then into, the victim. See *Martin v. State*, supra at 653. Berry was either guilty of aggravated assault or not guilty by reason of self-defense, and "[t]he jury was fully and completely instructed on justification. The trial court did not err in refusing to give the requested charge [on reckless conduct]." *Riley v. State*, 181 Ga. App. 667, 670 (3) (353 SE2d 598) (1987). See also *Martin v. State*, supra.

6. Berry asserts that his trial counsel was ineffective because he failed to object when the medical examiner testified that the victim's death was a homicide and not an accident. He contends that this testimony was an expression of the witness' opinion on the ultimate issue in the case.

To prevail on an ineffectiveness claim

> requires proof that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). In order to meet this burden, [Berry] must overcome the strong presumption that the performance of his defense counsel falls within the broad range of reasonable conduct. [Cit.] Here, that presumption was reinforced by the testimony of [Berry's] trial attorney [him]self, who appeared at the hearing on the motion for new trial where [he] explained [his] challenged actions and inactions. Having heard all of the evidence, including counsel's testimony, the trial court found no merit in the ineffectiveness claim. On this appeal, this Court accepts the trial court's findings of fact, unless they are clearly erroneous. However, the trial court's legal conclusions are reviewed de novo. [Cit.]

*Wiggins v. State*, 280 Ga. 627, 628-629 (2) (632 SE2d 80) (2006). Counsel explained that he did not consider the testimony objectionable because there was no dispute that the "manner" of the victim's death was a homicide. That was not unreasonable, "[s]ince homicide means 'the killing of any human being'. . . ." *Griggs v. State*,

17 Ga. App. 301, 302 (6) (a) (86 SE 726) (1915). There was no dispute that Berry killed Rotunno, because he was operating the car which caused the death. Under the evidence, the ultimate issue for the jury to determine was whether Berry acted with malice or during the commission of aggravated assault, in which case he was guilty of murder, or whether he acted as the result of Rotunno's provocation, in which case he was guilty of voluntary manslaughter, or whether he acted in self-defense, in which case he was not guilty of any crime because the homicide was justified. See *Curney v. State*, 275 Ga. 534, 536 (2) (570 SE2d 294) (2002); *Willis v. State*, 274 Ga. 699, 701 (3) (558 SE2d 393) (2002). Defense counsel testified that he would have objected if the medical examiner had invaded the province of the jury by expressing the opinion that the homicide was a murder. Failing to object when the expert only identified the manner of death as homicide, rather than an accident, did not constitute deficient performance on the part of the trial lawyer.

Moreover, even assuming that an objection would have been meritorious, Berry still did not make a sufficient showing as to the prejudice prong of his ineffectiveness claim. Nothing in the record supports a finding "that the jury would have reached a different verdict if the medical examiner's testimony had been excluded. As a result, we agree with the trial court's ruling that [Berry] has failed to prove that his trial counsel was ineffective." *Curney v. State*, supra.

*Judgment affirmed. All the Justices concur, except Hunstein, P. J., who concurs in Divisions 1, 2, 4, 5, and 6, and in the judgment.*

DECIDED JULY 13, 2007 —
RECONSIDERATION DENIED SEPTEMBER 24, 2007.

*Brian Steel*, for appellant.

*N. Stanley Gunter, District Attorney, Charles W. Smegal, Assistant District Attorney, Thurbert E. Baker, Attorney General, Elizabeth A. Harris, Assistant Attorney General*, for appellee.