## S08G1152. PRESLEY v. THE STATE.
(674 SE2d 909)

HINES, Justice.

The Court granted a writ of certiorari to the Court of Appeals in *Presley v. State*, 290 Ga. App. 99 (658 SE2d 773) (2008), to review its ruling that the trial court did not err in ordering that spectators be excluded from the courtroom during jury voir dire in Eric Presley's trial for cocaine trafficking, which resulted in his conviction. Finding no infirmity in the trial court's directive, we affirm.

At Presley's trial, before the prospective jurors were brought into the courtroom for jury voir dire, the trial court inquired of a

---

courtroom observer: "Now, the gentleman in the black shirt, sir, do you have a case or . . . ," which elicited the response: "No, I'm just here." The trial court replied: "The reason I say that is for all the other observers in the courtroom, when I — when the jurors come up, they will be sitting on those rows, and you can't sit on the same rows with the jurors."

After an unrecorded colloquy, the court said: "And, and the gentleman in the black shirt, you should not hang around on the sixth floor. He can go down to the, maybe the snackbar? . . . Is he a witness? Are you a witness?" The observer replied: "No, I'm Mr. Presley's uncle." The court said:

> Okay. Well, you still can't sit out in the audience with the jurors. You know, most of the afternoon actually we're going to be picking a jury. And we may have a couple of pre-trial matters, so you're welcome to come in after we plete [sic] — complete selecting the jury this afternoon. But, otherwise, you would have to leave the sixth floor, because jurors will be all out in the hallway in a few moments. That applies to everybody who's got a case.

Presley's counsel objected to "the exclusion of the public from the courtroom." The court responded:

> I'm not excusing the public from the courtroom. There just isn't space for them to sit in the audience. We have very small courtrooms, and the witnesses and relatives cannot sit in the audience beside the potential jurors. That will be grounds for a mistrial, and because of a tainted jury panel.

Presley's counsel then said: "Well, I'm wondering, Your Honor, whether . . . some accommodation could not be made for both, some of those members of the family and the jurors?" The court answered:

> Well, the uncle can certainly come back in once the trial starts. There's no, really no need for the uncle to be present during jury selection. When the trial starts, he can certainly come back into the courtroom. But he — we have 42 jurors coming up. Each of those rows will be occupied by jurors. And his uncle cannot sit and intermingle with members of the jury panel. But, when the trial starts, the opening statements and other matters, he can certainly come back into the courtroom.

Presley took exception to the court's ruling.

After his conviction, Presley moved for a new trial on the general grounds, and amended that motion to include the ground that the trial court erred in "refusing to make an accommodation" so as to allow observers at all phases of his trial. At the hearing on the motion for new trial, Presley presented evidence regarding how many persons could be seated in the courtroom's four rows of seats; he asserted that 58 could be comfortably accommodated, and contended that additional seating could have been brought into the courtroom to accommodate observers and potential jurors.[1]

A criminal defendant has the right to a public trial under the Sixth and Fourteenth Amendments to the Constitution of the United States. *Waller v. Georgia*, 467 U. S. 39 (104 SC 2210, 81 LE2d 31) (1984).[2] This right extends to the proceedings of jury voir dire and selection. Id. at 45-46. See also *Press-Enterprise Co. v. Superior Court of California*, 464 U. S. 501, 510 (104 SC 819, 78 LE2d 629) (1984). Under *Waller*, to exclude the public from a trial, there must be "an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." Id. at 48 (II) (B). Here, the trial court certainly had an overriding interest in ensuring that potential jurors heard no inherently prejudicial remarks from observers during voir dire. See *Sharpe v. State*, 272 Ga. 684, 687-688 (5) (531 SE2d 84) (2000).[3] And, the trial court based its decision to exclude observers on the fact that, given the arrangement of the courtroom, observers would be "intermingle[d]" with the potential jurors, and explained this concern to counsel. Nor was the trial court's order overbroad; the court made it clear that the exclusion of observers was only for the duration of jury voir dire.

---

[1] No testimony was offered at the hearing on the motion for new trial regarding how many observers were in the courtroom at the time of the trial court's announcement regarding voir dire.

[2] No persons who were excluded from the courtroom have sought relief in this case. Compare *R. W. Page Corp. v. Lumpkin*, 249 Ga. 576 (292 SE2d 815) (1982).

[3] This Court has long recognized the trial court's interest in isolating jurors from public remarks.

In *Myers v. State*, 97 Ga. 76 (5), 77 (25 SE 252) [(1895)], it was held: "While every person accused of crime is entitled to a public trial, it is not necessary to its legality that a great multitude should be in attendance, and the presiding judge should not permit the bar or court-room to become so crowded as to impede the progress of the trial by rendering it difficult for the jurors to enter or leave the box, or by preventing the free movement of counsel and witnesses; moreover, the jury should not be in such close and constant contact with the audience as that remarks of bystanders as to the guilt or innocence of the accused, or other indications of public feeling for or against him, may reach their ears or come under their observation."
*Moore v. State*, 151 Ga. 648, 654-655 (108 SE 47) (1921).

Nonetheless, Presley asserts that the trial court's action was infirm because the trial court did not consider any alternatives to excluding all observers. However, no alternatives were suggested to the court; Presley's only reference regarding the subject was a nebulous request for "accommodation . . . for both, some of those members of the family and the jurors?" It has been noted that, although *Waller* declared that trial courts are to consider alternatives to closure, the United States Supreme Court did not provide clear guidance regarding whether a court must, sua sponte, advance its own alternatives to it. See *Ayala v. Speckard*, 131 F3d 62, 70-72 (II) (B) (2nd Cir. 1997) (addressing closure during the period of time that undercover police witnesses were testifying). In that regard, we are persuaded by the reasoning of *People v. Ramos*, 685 NE2d 492 (N.Y. 1997), that, when a court is considering whether to close a portion of the proceedings, and there is no discussion on the record regarding alternative actions,[4] "it can be [inferred] that the trial court, in ordering closure, determined that no lesser alternative would protect the articulated interest. [Cits.]" Id. at 504. See also *Ayala*, supra. Accordingly, it is appropriate to "conclude that, where the factual record permits closure and the closure is not facially overbroad, the party opposed to closing the proceeding must alert the court to any alternative procedures that allegedly would equally preserve the interest. [Cit.]" *Ramos*, supra at 504.

> Any other rule would place an impractical — if not impossible — burden on trial courts . . . . Even if the court were to hold a separate hearing on the issue, or itself consider and reject some alternatives to closing the proceeding, a defendant on appeal could likely always [suggest another alternative]. Under these circumstances, placing the onus wholly on trial courts would provide an incentive for defendants to remain silent. [Cit.]

Id. at 505.

Ruling that, in these circumstances, Presley was obliged to present the court with any alternatives that he wished the court to consider, recognizes the general appellate precept that one who objects to an action of the trial court must raise the issue at the time of the trial court's action, so as to afford the court the opportunity to take any appropriate remedial action, or else forfeit review. See *White v. State*, 281 Ga. 276, 280 (5) (637 SE2d 645) (2006). It also is consistent with the long-standing principle that

---

[4] *Ramos* also observed that "*Waller* . . . does not hold that the trial court must explicitly consider alternatives on the record." Supra at 503.

> [t]he conduct of the trial of any case is necessarily controlled by the trial judge, who is vested with a wide discretion and in the exercise of which an appellate court should never interfere unless it is made to appear that wrong or oppression has resulted from its abuse.

*Lemley v. State*, 245 Ga. 350, 353-354 (3) (264 SE2d 881) (1980). (Citations and punctuation omitted.) When neither the defendant nor the State directs the court's attention to alternatives, there is no abuse of discretion in the court's failure to sua sponte advance its own alternatives.[5]

*Judgment affirmed. All the Justices concur, except Sears, C. J., and Hunstein, P. J., who dissent.*

SEARS, Chief Justice, dissenting.

A room that is so small that it cannot accommodate the public is a room that is too small to accommodate a constitutional criminal trial.[6] Here, however, it is clear from the pictures in the record that complete closure to the public of a critical portion of the trial — voir dire — was not required by space considerations, nor was the closure prompted by specific conduct by any of the spectators in the courtroom. Instead, it was the trial court's sole decision to conduct voir dire with 42 potential jurors in the courtroom at a time that created the overcrowding problem, a decision wholly within the trial court's control.

The majority acknowledges that the trial court did not consider any alternatives to closure. The trial court believed — erroneously — that the constitutional commands to keep criminal trials open to the public do not apply to voir dire.[7] The failure to consider alternatives sua sponte — after announcing at the outset of trial that it planned to close voir dire to the public entirely — is a clear violation of the United States Supreme Court's decision in *Waller v. Georgia* and our own decision in *R.W. Page Corp. v. Lumpkin*.[8] The Supreme Court held in *Waller* that "the trial court *must* consider reasonable

---

[5] Presley asserts that the "movant" wishing closure has certain burdens that were not met in this case. See *R.W. Page Corp.*, supra. As in *Berry v. State*, 282 Ga. 376, 378-380 (3) (651 SE2d 1) (2007), neither *party* moved for closure – the State was silent during the relevant exchange – and we will not characterize the trial court's role as that of "movant" under *Lumpkin*.

[6] U. S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a . . . public trial . . . ."); Ga. Const. of 1983, Art. I, Sec. I, Par. XI (a) ("In criminal cases, the defendant shall have a public . . . trial . . . .").

[7] *Press-Enterprise Co. v. Superior Court of California*, 464 U. S. 501, 511 (104 SC 819, 78 LE2d 629) (1984) (holding Sixth Amendment right to a public trial extends to voir dire).

[8] *Waller v. Georgia*, 467 U. S. 39 (104 SC 2210, 81 LE2d 31) (1984); *R.W. Page Corp. v. Lumpkin*, 249 Ga. 576 (292 SE2d 815) (1982). In *Waller*, the Court held that closure of any

alternatives to closing the proceeding."[9] In *Lumpkin*, we emphasized that Georgia trial judges have even less discretion in this area than their federal counterparts do before stating the following:

> While federal trial court judges are admonished to *consider* jury sequestration (or some other remedy) as an alternative to the closing of hearings to the public and the press, we now hold that a Georgia trial court judge shall *use* jury sequestration (or some other means) to exclude prejudicial matters from the jury's knowledge and consideration unless for some reason fully articulated in his findings of fact and conclusions of law jury sequestration (or another remedy) would not adequately protect the defendant's right to a fair trial.[10]

*Waller* and *Lumpkin* are controlling and mandate reversal here.

The majority excuses the trial court's failure to consider alternatives to closure on the ground that none were suggested to it. The majority thus shifts from the trial court to the defendant the burden of coming up with alternatives to closure as a prerequisite for securing a public trial. However, Presley's counsel had no advance notice that the trial court intended to close voir dire to the public, and thus it can hardly be said that the failure of Presley's counsel to come up with specific alternatives on the spot amounted to a knowing, voluntary, and intelligent waiver by Presley of his constitutional right to a public trial.[11]

Second and more importantly, the majority fails to explain why the requirement to consider alternatives to closure should be obviated when it is the trial court rather than a party who initiates it. The constitutional right to a public trial is designed primarily to police the conduct of the judges who preside over them by exposing their actions to public scrutiny.[12] Thus, it would seem even more

---

portion of a criminal trial should be "rare" and stated the constitutional test as follows:
> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

[9] *Waller*, 467 U. S. at 48 (emphasis supplied).

[10] *Lumpkin*, 249 Ga. at 579-580.

[11] *Lumpkin*, 249 Ga. at 579 ("[O]ur constitution commands that open hearings are the nearly absolute rule and closed hearings the *very rarest* of exceptions.") (emphasis supplied).

[12] See, e.g., *In re Oliver*, 333 U. S. 257, 270 (68 SC 499, 92 LE 682) (1948) ("[T]he guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of

important to require specific consideration, on the record, of alternatives when a trial court closes a portion of a trial to the public without any prompting by the parties. That is why we held in *Lumpkin* that even where the prosecution and the defense both agree to closure, the trial court must enter a closure order with "written findings of fact fully articulating the alternatives to closure considered by the trial court and the reason or reasons why such alternative would not afford the movant an adequate remedy."[13] No such order was entered in this case.

Most troublingly, the majority's reasoning permits the closure of voir dire in *every criminal case* conducted in this courtroom whenever the trial judge decides, for whatever reason, that he or she would prefer to fill the courtroom with potential jurors rather than spectators. This case does not involve testimony by an undercover officer whose life would be threatened if the court were not closed during his or her testimony as the cases cited by the majority in support of its position did.[14] It does not involve matters of national security. Rather, this case involves voir dire in a garden variety drug trafficking case no different than hundreds or perhaps even thousands of similar cases pending on the dockets of trial courts throughout this state. The majority today gives the trial courts in these cases the green light to exclude the public entirely from voir dire in all of them, contrary to the express commands of the Sixth Amendment, the Georgia Constitution, *Waller*, and *Lumpkin*. I respectfully dissent.

I am authorized to state that Presiding Justice Hunstein joins in this dissent.

DECIDED MARCH 23, 2009 —
RECONSIDERATION DENIED APRIL 10, 2009.

*Gerard B. Kleinrock*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Gerald Mason, Assistant District Attorneys*, for appellee.

---

judicial power.").
[13] *Lumpkin*, 249 Ga. at 580.
[14] *Ayala v. Speckard*, 131 F3d 62, 64-65 (2nd Cir. 1997); *New York v. Ramos*, 685 NE2d 492, 494 (N.Y. 1997).